USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  8/15/17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
XUE MING WANG, *individually and on behalf of all*                  :
*other employees similarly situated,*                               :
                                                                    :
                                                   Plaintiff,       :
                                                                    :
                              -v -                                   :
                                                                    :
ABUMI SUSHI INC. *d/b/a* ABUMI SUSHI,                               :
QING ZHONG LI, CHEN CHAO ZHAO,                                      :
JOHN DOE, and JANE DOE # 1-10,                                      :
                                                                    :
                                                   Defendants.  :
------------------------------------------------------------------X

1:15-cv-9860-GHW

OPINION AND ORDER

GREGORY H. WOODS, United States District Judge:

Plaintiff Xue Ming Wang brings this action for violations of the Fair Labor Standards Act

("FLSA"), the New York Labor Law ("NYLL"), and New York General Business Law § 349

("§ 349") in connection with his employment as a delivery worker at a Japanese restaurant located at

209 East 26th Street in Manhattan between December 10, 2013 and December 15, 2015.  In June

2015, former owner 1 Chimi Sushi Inc. sold the assets of the restaurant to Defendant Abumi Sushi

Inc.  Defendant Qing Zhong Li is the owner of Abumi Sushi Inc.  None of the remaining

defendants have appeared in this action.

Both Plaintiff and the appearing Defendants have filed motions for partial summary

judgment on the issue of successorship liability—that is, whether the appearing Defendants can be

held liable for claims pre-dating the June 2015 asset sale, when they were not Plaintiff's "employer"

within the meaning of the FLSA or NYLL, as successors to the previous owner's liabilities.  For the

reasons described below, the Court concludes that they cannot.  In this case, the question turns

largely on whether the appearing Defendants had "notice" of their predecessors' alleged wage and

hour violations prior to the sale.  In concluding that they did not, the Court rejects Plaintiff's

expansive view of constructive notice, which would impute notice of a predecessor's violations of

law on innocent purchasers whenever those violations could have been discovered through the exercise of due diligence.  Such a rule would effectively create a duty of due diligence, which in the Court's view should be imposed by Congress, or at least the Second Circuit, in the first instance. Accordingly, Defendants' motion is GRANTED, and Plaintiff's motion is DENIED.

## I.   BACKGROUND[1]

Plaintiff Xue Ming Wang was employed as a delivery worker at a Japanese restaurant located at 209 East 26th Street in Manhattan from December 10, 2013 until December 15, 2015 (the "Restaurant").  Defs.' Local Rule 56.1 Counterstatement (ECF No. 55) ("Defs.' 56.1") ¶ 1.[2]  Prior to June 2015, the restaurant was owned and operated by non-parties 1 Chimi Sushi Inc. ("1 Chimi") and Liang Zhang.  *Id.* ¶ 3.  On June 2, 2015, the assets of the restaurant were sold by 1 Chimi to Defendant Abumi Sushi Inc. ("Abumi") and its owner, Defendant Qing Zhong Li ("Li," and together with Abumi, the "Appearing Defendants").  *Id*; Pl.'s Local Rule 56.1 Counterstatement (ECF No. 52) ("Pl.'s 56.1").[3]  Li had learned that 1 Chimi was selling the Restaurant from the friend of a former employee.  *Id.* ¶ 27.  In negotiating the purchase, Li dealt primarily with the Restaurant's then-manager, whose nickname was Bui Di.  *Id.* ¶ 29.  Li does not personally know Liang Zhang and never had any contact with Zhang until the day of the closing.  *Id.* ¶ 28.

The sale of the Restaurant was accomplished pursuant to a written agreement entitled "Contract for Sale of Business" (the "Agreement").  Decl. of Vincent Wong ("Wong Decl."), Ex. A. The Agreement describes the subject matter of the sale as follows:

> The Transferor agrees to sell to the Transferee and the Transferee agrees to buy

---

[1] The following facts are drawn from the parties' Local Civil Rule 56.1 Statements and other submissions in connection with the nearly identical cross-motions for summary judgment on the issue of successor liability, and are undisputed unless otherwise noted.

[2] References to "Defs.' 56.1" are to the Rule 56.1 counterstatement submitted in connection with Plaintiff's motion. References to "Pl.'s 56.1" are to the Rule 56.1 counterstatement submitted in connection with Defendants' motion.  In both cases, the Rule 56.1 counterstatements contain both the assertions of the moving party and the responses of the non-moving party.

[3] Abumi Sushi Inc. was formed on approximately May 6, 2015, while 1 Chimi Sushi Inc. was formed in December 2010 and was dissolved on August 10, 2015.  Defs.' 56.1 ¶¶ 4-5.

> the following described business:  Japanese Restaurant located at:  207 E. 26th
> Street, New York, NY 10010 including the stock in trade, fixtures, equipment,
> accounts receivable, contract rights, lease, good will, licenses, rights under any
> contract for telephone service or other rental, maintenance or use of equipment,
> machinery and fixtures at said premises, more particularly described in Schedule A
> hereto attached, free and clear of any debts, mortgages, security interests or other
> liens or encumbrances except as herein stated.

*Id.* ¶ 1.  Pursuant to Schedule A, the "[p]roperty to be [t]ransferred" was:  "All furniture, fixtures, equipment, chattels and personal properties at the Japanese Restaurant located at:  207 E. 26th Street, New York, NY 10010."  *Id.* at p. 3.  The Agreement does not contain an assumption of any liabilities, other than "full performance of the existing lease," which was assigned to Abumi in connection with the sale.  *Id.* ¶ 10.  In a rider to the Agreement, 1 Chimi Sushi provided a representation and warranty that "the business sold herein is being operated in accordance with all laws, ordinances and rules affecting said business."  *Id.* at p. 4.

The cross-motions currently before the Court only concern liability for FLSA, NYLL, and § 349[4] violations alleged to have occurred during the period of time prior to the June 2, 2015 sale of the Restaurant—that is, before the Appearing Defendants owned and operated the Restaurant (the "Pre-Sale Period").  Defendants dispute or otherwise challenge some of Plaintiff's assertions regarding the violations that occurred during the Pre-Sale Period.  At the very least, however, it is undisputed for purposes of these motions that Plaintiff worked more than 40 hours per week during the Pre-Sale Period, and that 1 Chimi and Zhang paid him a fixed salary in cash regardless of the number of hours he worked.  Defs.' 56.1 ¶¶ 18, 20.  It is also undisputed that the Appearing Defendants had no knowledge of 1 Chimi's wage and hour practices, including how much 1 Chimi and Zhang paid Plaintiff and their other employees.  *Id.*  ¶ 34.

---

[4] Plaintiff's sole claim under N.Y. Gen. Bus. Law § 349 is for willful filing of fraudulent information returns.  All remaining claims are brought under the FLSA or the NYLL.

## II.   PROCEDURAL HISTORY

Plaintiff filed this action on December 17, 2015 against ABC Corp. d/b/a Abumi Sushi, Abumi Sushi Inc. d/b/a Abumi Sushi, Qing Zhong Li, Cheng Chao Zhao, and John Doe and Jane Doe # 1-10, asserting claims for unpaid minimum wages, unpaid overtime, unpaid spread-of-hours premium, failure to provide paystubs and time-of-hiring wage notices, failure to provide reimbursement for expenses relating to tools of the trade, and willful filing of fraudulent information returns.  ECF No. 1.  Although the action was filed as a putative collective and class action, it has proceeded solely on an individual basis.

The Appearing Defendants answered the complaint on January 19, 2015.  ECF No. 9.  On May 24, 2016, Plaintiff filed an amended complaint, removing ABC Corp. d/b/a Abumi Sushi from the list of defendants and adding 1 Chimi and Zhang.  ECF No. 15.  The Appearing Defendants filed an answer to the amended complaint on June 23, 2016, as well as crossclaims against all other defendants for contribution and indemnification.[5]  ECF No. 19.  On September 20, 2016, Plaintiff voluntarily dismissed his claims against 1 Chimi and Zhang without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i).  ECF No. 23.

After several extensions from the Court, discovery in this matter closed on November 1, 2016.[6]  *See* ECF No. 26.  On that date, the Appearing Defendants filed a letter requesting a pre-motion conference to discuss an anticipated motion for partial summary judgment as to all claims predating the June 2, 2015 sale "for the very simple reason that appearing Defendants were not and could not have been Plaintiff's employer before that date."  ECF No. 27.  On November 8, 2016, Plaintiff filed a response letter arguing that the Appearing Defendants should be held liable for violations during the Pre-Sale Period under a federal common-law doctrine of successorship liability

---

[5] None of the remaining defendants have appeared in this matter.

[6] The Court subsequently extended discovery once more, until November 21, 2016, for the limited purpose of allowing the Appearing Defendants to respond to certain outstanding discovery requests.  ECF No. 33.

known as the "substantial continuity" doctrine.  ECF No. 30.  The Court held a pre-motion conference on November 10, 2016, and the instant cross-motions for summary judgment resulted.

## III.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" (quoting former Fed. R. Civ. P. 56(c))).

The party moving for summary judgment must first demonstrate the absence of any genuine dispute of material fact.  *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex*, 477 U.S. at 323-24).  If the burden of proof at trial would fall on the movant, that party's "own submissions in support of the motion must entitle it to judgment as a matter of law."  *Albee Tomato, Inc. v. A.B. Shalom Produce Corp.*, 155 F.3d 612, 618 (2d Cir. 1998).  If, on the other hand, "the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim."  *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009) (citing *Celotex Corp.*, 477 U.S. at 322-23).

If the moving party meets its burden, the nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial'" in order to avoid summary judgment.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting former Fed. R. Civ. P. 56(e)).  "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]."  *Anderson*, 477 U.S. at 252.  Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, and he

"may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks and citation omitted).

A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (internal quotation marks and citation omitted). The Court's job is not to "weigh the evidence or resolve issues of fact." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 254 (2d Cir. 2002). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Jeffreys v. City of New York*, 426 F.3d 549, 553-54 (2d Cir. 2005) (citation omitted).

In resolving cross-motions for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001) (citing *Schwabenbauer v. Bd. of Educ.*, 667 F.2d 305, 314 (2d Cir. 1981)).

## IV.   DISCUSSION

As already noted, the parties' cross-motions present only one ultimate question: whether the Appearing Defendants may be held liable for alleged violations that occurred before they acquired the Restaurant through an asset transfer on June 2, 2015. Plaintiff seeks summary judgment holding that they may, while the Appearing Defendants seek summary judgment holding that they may not. The underlying issues briefed by the parties are (1) whether the traditional common-law test or instead the federal common-law "substantial continuity" test governs the question of successorship liability under the FLSA and (2) whether the Appearing Defendants may be held liable as successors

6

to 1 Chimi and Zhang's FLSA, NYLL, or § 349 liabilities under each of those tests.  Although the weight of authority supports application of the "substantial continuity" test to Plaintiff's FLSA claims, the Court concludes that the Appearing Defendants are not subject to successorship liability under either test.

### A.  The Traditional Test

"Under both New York law and traditional common law, a corporation that purchases the assets of another corporation is generally not liable for the seller's liabilities." *New York v. Nat'l Serv. Indus., Inc.*, 460 F.3d 201, 209 (2d Cir. 2006) ("*NSI IV*") (Sotomayor, J.).  "New York recognizes four common-law exceptions to the rule that an asset purchaser is not liable for the seller's debts, applying to:  (1) a buyer who formally assumes a seller's debts; (2) transactions undertaken to defraud creditors; (3) a buyer who de facto merged with a seller; and (4) a buyer that is a mere continuation of a seller." *Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 45 (2d Cir. 2003).  Courts have held that the "*de facto* merger" exception and the "mere continuation" exception are "so similar that they may be considered a single exception." *Cargo Partner*, 352 F.3d at 45 n.3 (citing cases). Here, the Appearing Defendants did not assume 1 Chimi or Zhang's debts.  The Agreement expressly provides that the sale is "free and clear of any debts, mortgages, security interests or other liens or encumbrances," and it lists no creditors or amounts claimed against the business.  Wong Decl., Ex. A.  In addition, there is no evidence in the record suggesting that the sale was undertaken in an effort to defraud creditors.  Thus, the Appearing Defendants may be held liable as successors under the traditional test only if they entered into a "*de facto* merger" with, or were a "mere continuation" of, 1 Chimi and Zhang.

"A de facto merger occurs when a transaction, although not in form a merger, is in substance 'a consolidation or merger of seller and purchaser.'" *Cargo Partner*, 352 F.3d at 45 (quoting *Schumacher v. Richards Shear Co.*, 59 N.Y.2d 239, 245 (1983).  To determine whether a transaction is a *de facto* merger or mere continuation, courts consider whether there was "(1) continuity of

ownership; (2) cessation of ordinary business and dissolution of the acquired corporation as soon as possible; (3) assumption by the purchaser of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the acquired corporation; and (4) continuity of management, personnel, physical location, assets, and general business operation." *NSI IV*, 460 F.3d at 209.

Because "continuity of ownership is the essence of a merger," however, the exception "cannot apply in its absence." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 505-06 (2d Cir. 2011); *see also Graham v. James*, 144 F.3d 229, 240 (2d Cir. 1998) ("Under the common law mere continuation theory, successor liability attaches when the plaintiff demonstrates the existence of a single corporation after the transfer of assets, with an identity of stock, stockholders, and directors between the successor and predecessor corporations." (internal quotation marks and citation omitted)). That indispensable element is clearly not met here. As Plaintiff himself concedes, "there is no dispute that ownership of the business changed hands" when 1 Chimi sold the Restaurant to Abumi. Pl.'s Mem. of Law in Supp. of Mot. for Summ. J. (ECF No. 37) ("Pl.'s Mem.") at 14. As a result, because there is no genuine dispute of material fact on this indispensable factor, the Court concludes as a matter of law that the Appearing Defendants cannot be held liable for FLSA, NYLL, or § 349 violations predating the June 2, 2015 sale under the traditional test for successorship liability. *See Battino v. Cornelia Fifth Ave., LLC*, 861 F. Supp. 2d 392, 401 (S.D.N.Y. 2012) ("Here, there is no dispute that ownership of the business changed hands; thus, regardless of whether the other *de facto* merger factors are present, the *de facto* merger and 'mere continuation' exceptions do not apply."). With respect to Plaintiff's pre-sale NYLL and § 349 claims, this ends the analysis, as the Court is aware of no basis to apply the federal common-law doctrine discussed below to claims arising under state law.

## B. The "Substantial Continuity" Test

Plaintiff's quest to hold the Appearing Defendants liable as successors to his pre-June 2015 claims fails under the federal common-law "substantial continuity" test, as well. "The FLSA, like

virtually all employment law statutes, does not discuss whether the liabilities it creates may be passed on to innocent successor employers.  However, beginning with cases under the National Labor Relations Act ('NLRA'), federal courts have developed a federal common law successorship doctrine that now extends to almost every employment law statute." *Steinbach v. Hubbard*, 51 F.3d 843, 845 (9th Cir. 1995) (adopting the doctrine for FLSA claims because the "fundamental purpose" of the FLSA is "as fully deserving of protection as the labor peace, anti-discrimination, and worker security policies underlying the NLRA, Title VII, 42 U.S.C. § 1981, ERISA, and MPPAA").  That doctrine, "which presents a lower bar to relief than most state jurisprudence, was designed to impose liability upon successors beyond the confines of the common law rule when necessary to protect important employment-related policies." *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 150 (3d Cir. 2014) (internal quotation marks and citation omitted).

Although the Second Circuit has not yet addressed whether the "substantial continuity" test applies in the FLSA context, three other Circuits have held that it does.  *Thompson*, 748 F.3d at 151-52; *Teed v. Thomas & Betts Power Sols., L.L.C.*, 711 F.3d 763, 766-67 (7th Cir. 2013); *Steinbach*, 51 F.3d at 845.  Several courts within this District have agreed.  *See, e.g.*, *Bautista v. Beyond Thai Kitchen*, No. 14-cv-4335 (LGS), 2015 WL 5459737, at *3-4 (S.D.N.Y. Sept. 17, 2015); *Battino*, 861 F. Supp. 2d at 403-04; *Jai Fu Chen v. New 9th Ave Pearl on the Sushi, Inc.*, No. 14-cv-580 (JPO), 2015 WL 3947560, at *4-5 (S.D.N.Y. June 29, 2015); *Wong v. Hunda Glass Corp.*, No. 09-cv-4402 (RLE), 2010 WL 2541698, at *1 (S.D.N.Y. June 23, 2010) (magistrate judge).

Some courts in the Eastern District of New York have applied the traditional common-law/New York test to FLSA claims.  The Court agrees with Judge Schofield, however, that those decisions "(1) mistakenly rely on [*New York v.*] *National Service* [*Industries, Inc.*, 352 F.3d 682 (2d Cir. 2003) ("*NSI II*") or *NSI IV*, which addressed substantial continuity only in the context of the Comprehensive Environmental Response, Compensation and Liability Act] and (2) do not conclusively rule that substantial continuity is inapplicable to FLSA claims." *Bautista*, 2015 WL

9

5459737, at *4; *see, e.g.*, *Vasquez v. Raineri Cheese Corp.*, No. 07-cv-464, 2010 WL 1223606, at *10 n.14 (E.D.N.Y. Mar. 26, 2010) (noting that "the case for successor liability may be more or less compelling than the case presented under the New York rule" but "regardless which test is applied, the result remains the same"); *Kaur v. Royal Arcadia Palace, Inc.*, 643 F. Supp. 2d 276, 290 n.10 (E.D.N.Y. 2007) (finding traditional test "appropriately applied in the FLSA context," but noting that outcome would be the same under "substantial continuity" test).

Still other courts in the Eastern District have chosen to apply the "substantial continuity" test. *E.g.*, *De Ping Song v. 47 Old Country, Inc.*, 975 F. Supp. 2d 288, 296 (E.D.N.Y. 2013) ("Upon review, the court holds that in the absence of direct guidance from the Second Circuit, but in light of that court's reference to the widespread acceptance of the substantial continuity test in the labor law context, the better view is to apply that test in the context of FLSA claims of successor liability. This approach is in accord with cases routinely applying the doctrine in other areas of labor and employment law."), *vacated on other grounds*, 578 F. App'x 22 (2d Cir. 2014). And, although the Second Circuit's decision in *NSI II* overruled its prior holding that the "substantial continuity" test applied in the CERCLA context, the Circuit's decision applying the test to claims under Title VII has not been overruled. *See Forde v. Kee Lox Mfg. Co.*, 584 F.2d 4, 5-6 (2d Cir. 1978). Indeed, in *NSI II*, the Circuit recognized that the test was "well established in the area of labor law." 352 F.3d at 686. While there may be room to argue that the Second Circuit should extend the rationale of *NSI II* to overrule *Forde*, such a result is far from clear and is not for this Court to decide. Thus, at least at the present time, the weight of authority appears to support application of the "substantial continuity" doctrine to FLSA claims. Nonetheless, because the Court reaches the same result under both tests, this choice is not dispositive here.

The "substantial continuity" test is broader than the traditional common-law/New York test. In particular, "[u]nlike the traditional common law test, [the "substantial continuity" test] does not require continuity of ownership between the two business." *Battino*, 861 F. Supp. 2d 392.

Courts applying substantial continuity generally cite a set of nine factors enunciated by the Sixth Circuit in the Title VII context:

> (1) whether the successor company had notice of the charge or pending lawsuit prior to acquiring the business or assets of the predecessor; (2) the ability of the predecessor to provide relief; (3) whether there has been a substantial continuity of business operations; (4) whether the new employer uses the same plant; (5) whether he uses the same or substantially the same work force; (6) whether he uses the same or substantially the same supervisory personnel; (7) whether the same jobs exist under substantially the same working conditions; (8) whether he uses the same machinery, equipment, and methods of production; and (9) whether he produces the same product.

*Musikiwamba v. ESSI, Inc.*, 760 F.2d 740, 750 (7th Cir. 1985) (citing *E.E.O.C. v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1094 (6th Cir. 1974)).  As the test has been applied, however, courts have considered the first two factors—notice and the ability of the predecessor to provide relief—to be indispensable.  In *Thompson*, for instance, the Third Circuit articulated the test with the following three factors:  "(1) continuity in operations and work force of the successor and predecessor employers; (2) notice to the successor-employer of its predecessor's legal obligation; and (3) the ability of the predecessor to provide adequate relief directly."  748 F.3d at 151.  Similarly, in describing the test in *Steinbach*, the Ninth Circuit explained:

> Under the NLRA, successor liability can attach when 1) the subsequent employer was a bona fide successor and 2) the subsequent employer had notice of potential liability.  Whether an employer qualifies as a bona fide successor will hinge principally on the degree of business continuity between the successor and predecessor.  The Ninth Circuit has fleshed out this test when dealing with other employee individual rights statutes by adding a third consideration:  the extent to which the predecessor is able to provide adequate relief directly.

51 F.3d at 845-46 (citations omitted); *see also Bates v. Pac. Mar. Ass'n*, 744 F.2d 705, 709-10 (9th Cir. 1984) ("There are three principal factors bearing on the appropriateness of successor liability for employment discrimination: (1) the continuity in operations and work force of the successor and predecessor employers, (2) the notice to the successor employer of its predecessor's legal obligation, and (3) the ability of the predecessor to provide adequate relief directly.").  Similarly, the Seventh Circuit has explained:

> The first two factors identified in *MacMillan* are critical to the imposition of successor liability. The successor doctrine is derived from equitable principles, and it would be grossly unfair, except in the most exceptional circumstances, to impose successor liability on an innocent purchaser when the predecessor is fully capable of providing relief or when the successor did not have the opportunity to protect itself by an indemnification clause in the acquisition agreement or a lower purchase price.

*Musikiwamba*, 760 F.2d at 750; *see Rojas v. TK Comm'ns, Inc.*, 87 F.3d 745, 750 (5th Cir. 1996) ("This court agrees with *Musikiwamba* that the first two factors are critical. The remaining seven simply provide a foundation for analyzing the larger question of whether there is a continuity in operations and the work force of the successor and predecessor employers . . . ." (internal quotations marks and citation omitted)).

This Court agrees with the cases described above that notice and the ability of the predecessor to provide relief to the plaintiff are critical factors.[7] To treat them any other way would be to effectively impose joint and several liability on innocent purchasers of a business's assets whenever the purchaser makes use of those assets and continues to run a substantially similar business post-sale—in other words, whenever the purchaser makes the most obvious and efficient use of the purchased assets. Such a result could not only be unfair to the innocent purchaser, but it could also create undesirable results and perverse incentives on a broader scale.

As the Seventh Circuit has explained, "the basic issue in every successorship case is how to strike a proper balance between on the one hand preventing wrongdoers from escaping liability and on the other hand facilitating the transfer of corporate assets to their most valuable uses." *E.E.O.C. v. Vucitech*, 842 F.2d 936, 945 (7th Cir. 1988); *accord Nutt v. Kees*, 796 F.3d 988, 991 (8th Cir. 2015) ("Before imposing liability, a court must consider the countervailing interests of the defendant-

---

[7] The Court notes that the analysis may indeed be different in the context of the NLRA, where the "substantial continuity" test was first employed. The question whether a new employer is obligated to bargain with an existing union, *see Fall River Dyeing & Finishing Corp. v. N.L.R.B.*, 482 U.S. 27 (1987), for example, is quite different than the question whether an innocent purchaser should be held liable for money damages for violations committed by the seller. The Court's comments here are limited to the use of the "substantial continuity" test in the context of employment-rights lawsuits for monetary relief.

successor and the larger policy goal of facilitating the free transfer of assets." (citations omitted));

*Brzozowski v. Corr. Physician Servs., Inc.*, 360 F.3d 173, 179 (3d Cir. 2004) (stating that the "emphasis

should be on balancing the interest in sanctioning unlawful conduct and the interest in facilitating

the market in corporate and other productive assets" (internal quotation marks and citation

omitted)); *cf. Golden State Bottling Co. v. N.L.R.B.*, 414 U.S. 168, 181 (1973) (stating, in NLRA context,

that the "ultimate problem" in determining whether to impose successorship liability is "striking a

balance between the conflicting legitimate interests of the bona fide successor, the public, and the

affected employee").

To hold a purchaser of assets liable as a successor without notice of the potential liability or

where the predecessor is capable of providing relief to the wronged party simply because the

purchaser used the purchased assets and retained substantially the same work force to conduct a

substantially similar business would directly hamper, rather than facilitate, the transfer of corporate

assets to their most valuable uses.  Perhaps even more troubling, however, is that such a test would

incentivize purchasers to fire all of the seller's employees in order to lessen the degree of continuity

between the pre-sale and post-sale businesses.

That result would disserve the interest in the stability of employer-employee relationships

that gave birth to the "substantial continuity" test in the first place, and could hardly be what

Congress intended.  *Cf., e.g., Musikiwamba*, 760 F.2d at 750-51 ("One of the underlying reasons for

the successor doctrine is that an employee's statutory rights should not be vitiated by the mere fact

of a sudden change in the employer's business.").  And, of course, were asset purchasers to structure

their post-sale businesses to avoid retaining substantially the same work force or to conduct a

substantially similar business, such inefficiencies would do nothing to promote the ability of pre-sale

employees to recover under the FLSA.  In other words, the incentives created by a "substantial

continuity" test in which notice and the ability of the predecessor to provide relief are optional

factors would leave asset purchasers (and, arguably, the economy) worse off, while at best leaving employees with pre-sale FLSA claims in the same position.

If, on the other hand, the purchaser does have notice of the liability at the time of sale and the predecessor is unable to provide adequate relief to the plaintiff, the balance between the competing interests at play shifts. A purchaser with notice of the predecessor's pending or potential liabilities may utilize that knowledge to negotiate a lower purchase price and/or an indemnification agreement. And, in circumstances where the predecessor is truly unable to provide adequate relief to the plaintiff, it may be that the remedial purpose of the FLSA and other employment-rights statutes counsels in favor of placing the burden of the plaintiff's remedy on an innocent purchaser with notice, rather than denying the plaintiff a remedy altogether.

For those reasons, the Court will proceed here from the understanding that the first two *MacMillan* factors (notice and the ability of the predecessor to provide relief) are indispensable to the imposition of successorship liability under the "substantial continuity" test. As described below, the Court concludes that Plaintiff has failed to establish, or create a triable issue of fact on, the notice factor and has, at best, failed to show an absence of a genuine issue of material fact as to the ability of 1 Chimi and Zhang to provide relief directly.

### 1. Notice

The Court notes at the outset that "the party advocating for successor liability bears the burden of proof." *Bautista*, 2015 WL 5459737, at \*5 (citing *Call Ctr. Techs., Inc. v. Grand Adventures Tour & Travel Pub. Corp.*, 635 F.3d 48, 52 (2d Cir. 2011)). That rule applies to all portions of the "substantial continuity" test, including the notice requirement. *See Battino*, 861 F. Supp. 2d at 405; *see also E.E.O.C. v. Barney Skanska Constr. Co.*, No. 99-cv-2001, 2000 WL 1617008, at \*4 (S.D.N.Y. Oct. 27, 2000) (Chin, J.) ("The EEOC has the burden of affirmatively alleging that Skanska had notice of the claim. . . . [I]t is not defendants' burden to demonstrate that they did not have notice."). Here, even resolving the disputed facts in Plaintiff's favor, Plaintiff has not provided any evidence that the

Appearing Defendants had notice either of the lawsuit itself or of the underlying alleged violations of law giving rise to the lawsuit.  In other words, Plaintiff's own submissions do not "entitle [him] to judgment as a matter of law."  *See Albee Tomato*, 155 F.3d at 618.

First, it is clear that the Appearing Defendants did not have notice at the time of the June 2, 2015 sale that this lawsuit was pending.  That would have been impossible, since the suit was not commenced until more than six months later.  At least some courts have held that the purchaser need not have actual notice of a pending lawsuit for purposes of the "substantial continuity" test if the purchaser had knowledge of a violation of law that could give rise to a suit.  In *Battino*, for example, it was undisputed that the defendant-successor knew prior to and at the time of the sale that the predecessor had not paid its employees for the two months immediately preceding the sale. 861 F. Supp. 2d at 406-7.  Although the defendant-successor had no knowledge of a then-pending lawsuit, the Court held that its "knowledge of the failure to pay [the plaintiff] alone is sufficient to put a successor on notice of potential liability" and thereby satisfy the notice requirement of the "substantial continuity" test.  *Id.*; *see also Abdel-Khalek v. Ernst & Young, L.P.*, No. 97-cv-4514 (JGK), 1999 WL 190790, at *7 (S.D.N.Y. Apr. 7, 1999) (holding, in Title VII case, that there was "at least an issue of fact about whether [defendant] had notice of the plaintiff's charge of discrimination" against predecessor where plaintiff had notified an executive at successor that "she believed she was not being hired by [the successor] because of her daughter's medical condition").

There is no evidence in the record showing that the Appearing Defendants had such knowledge in this case.  Plaintiff merely argues that the Appearing Defendants "had actual notice of the potential FLSA claim" because Li "visited and personally worked at the Restaurant almost every day for about a month prior to the purchase."  Pl.'s Mem. at 9.  The parties dispute both the nature and duration of Li's pre-sale visits.  *See* Defs.' 56.1 ¶¶ 30-32.  But even assuming that Plaintiff's version of the facts is true and that Li worked in the Restaurant almost every day for approximately one month before the sale was effectuated, Plaintiff provides no evidence—indeed nothing beyond

his own speculation—to support the assertion that this provided Li or Abumi with actual notice of wage and hour violations under the predecessors. And while Plaintiff contends in his opening brief that "Defendant Li directly witnessed [FLSA] violations," he cites to nothing at all in support. *See* Pl.'s Mem. at 9.

A party may not rely on "conclusory allegations or unsubstantiated speculation" on summary judgment. *See Fujitsu*, 247 F.3d at 428. Moreover, arguments in a brief are not evidence, and it is evidence rather than allegations that is required at the summary-judgment stage. *See Sales v. U.S. Underwriters Ins. Co.*, No. 93-cv-7580 (CSH), 1996 WL 175088, at *1 (S.D.N.Y. Apr. 15, 1996). Plaintiff does not explain how merely being at the Restaurant as a prospective buyer of assets would have informed Li of the predecessors' payment practices. In addition, Li testified that he did not know how much the predecessors had paid their employees. Wong Decl., Ex. F., Dep. of Abumi Sushi, by Qing Zhong Li ("Li Dep.") 22:16-22. In the absence of any concrete evidence that the Appearing Defendants had pre-sale knowledge of any wage and hour violations, the Court concludes that Plaintiff has failed to create a triable issue of fact as to whether they had such notice, much less produce evidence showing that he is entitled to judgment as a matter of law on the issue of notice.

Plaintiff urges the Court to apply a standard that would charge the Appearing Defendants with notice of the alleged wage and hour violations if they could have been discovered through due diligence. Pl.'s Mem. at 9-10. Plaintiff construes *Bautista* to permit the imputation of "constructive notice" to a purchaser whenever the purchaser "could have discovered the violations with reasonable diligence." Pl.'s Mem. of Law in Opp'n to Mot. for Summ. J. (ECF No. 51) ("Pl.'s Opp'n") at 8. As described below, however, the Court believes Plaintiff misreads *Bautista*. More significantly, the rule that Plaintiff promotes would turn the notice requirement of the substantial continuity test on its head. To the extent that Plaintiff asks the Court to impose a duty on purchasers to engage in due diligence without respect to the size of the transaction and even in the

absence of any red flags in order to avoid being burdened with a predecessor's FLSA liabilities, the Court declines.  In fact, the cases that Plaintiff cites do not even support the kind of duty he asks the Court to impose.

In *Bautista*, the court held that, although the evidence showed that the defendant lacked actual notice of the plaintiff's claims, the defendant did have constructive notice.  2015 WL 5459737, at *7.  While the court stated that there were "compelling policy reasons to impute constructive notice on successors who have failed to exercise due diligence," a closer look at the facts of *Bautista* shows that there was more than just a bare due-diligence standard at play.  *Id.* at *8.  Instead, the Court found that certain red flags—a suspiciously low purchase price and an uncharacteristically quick closing—should have led the defendant to inquire further into the circumstances of the transaction.

Here, Plaintiff points to no concrete red flags that should have led the Appearing Defendants to investigate further.  In an apparent attempt to parrot the reasoning of *Bautista*, Plaintiff argues that the $35,000 price that the Appearing Defendants paid for the assets was "conspicuously low" because it was only half of the yearly rent for the premises.  Pl.'s Mem. at 11.  But Plaintiff provides no evidence that such a ratio between the yearly rent and the purchase price of the assets in question here is suspicious or otherwise unexpected.[8]

*Bautista*, in turn, cites in some detail to *Goodpaster v. ECP Am. Steel, LLC*, No. 09-cv-59 (JVB), 2012 WL 5267971 (N.D. Ind. Oct. 24, 2012).  But in *Goodpaster*, unlike here, the plaintiff's federal anti-discrimination lawsuit was already pending at the time of the sale, and the court held the defendant to have constructive notice because it had "done nothing" to discover it.  2012 WL 5267971, at *4-5.

---

[8] By way of example, the Court might expect to see such an argument supported by a valuation of the purchased assets, or even expert testimony regarding the typical asset-to-rent ratio.  Plaintiff provides nothing of the sort.

It is one thing to charge an innocent purchaser with constructive notice of a lawsuit that has already been filed against the seller, or to expect a purchaser with actual knowledge of red flags to conduct a further inquiry, or to expect a purchaser with actual knowledge of wage underpayment to infer the potential for legal liability. But Plaintiff's proposed rule is quite another thing. It would effectively require any purchaser of assets to engage in comprehensive due diligence to discover any potential factual basis for a future claim against the predecessor, regardless of the size of the transaction, the sophistication of the parties, the absence of red flags, or the presence of affirmative representations confirming the absence of violations of law. The Court declines to undermine the notice requirement of the substantial continuity test, and to impose such a duty in the absence of a contrary command from the Second Circuit. As the Court has explained, Plaintiff's argument rests on a misreading of the facts in *Bautista*. To the extent, however, that *Bautista* can be read to support the proposition that a purchaser of assets has constructive notice of all violations of law by a business the assets of which are sold in an asset sale whenever those violations could have been ascertained through the exercise of reasonable due diligence, the Court respectfully disagrees.

Such an expansive reconstruction of the concept of constructive notice would fatally wound the notice requirement of the substantial continuity test, rendering that critical requirement largely illusory. At the very least, imposing a duty of due diligence would risk subjecting nearly every innocent purchaser to trial on the issue of the reasonableness of its diligence efforts. And, as already noted, to treat the notice requirement as toothless, subjecting nearly all innocent purchasers of assets to an extra-statutory form of joint and several liability for someone else's unlawful conduct, could beget a number of undesirable consequences. Thus, in this Court's view, and particularly in the context of a federal statutory scheme like the FLSA, such a duty should be imposed not by the courts, but by Congress. *Cf. United States v. Brosnan*, 363 U.S. 237, 251-52 (1960) (stating that the factors for and against a particular rule involved "many imponderables which this Court is ill-equipped to assess, on which Congress has not yet spoken, and which we think are best left to that

body to deal with in light of their full illumination"); *Ninth Ave. Remedial Grp. v. Allis-Chalmers Corp.*, 195 B.R. 716, 726 n.2 (N.D. Ind. 1996) (declining to impose due diligence standard on successors in employment-discrimination claim, "leaving it up to Congress").[9]

For the reasons above, the Court concludes that there is no evidence in the record suggesting that the Appearing Defendants had actual notice of their predecessors' alleged FLSA violations or the potential of Plaintiff's lawsuit. There is similarly no evidence in the record suggesting that the Appearing Defendants had the kind of constructive notice that the facts (rather than the rhetoric) of *Battino*, *Bautista* and *Goodpaster* bear out.[10]

## 2. Ability of the Predecessor Provide Relief

Although the Appearing Defendants' lack of notice of potential liability is by itself "an example of [ ] a reason . . . to withhold [successorship] liability," *Teed*, 711 F.3d at 766, the Court notes the following about 1 Chimi's and Zhang's ability to provide relief to Plaintiff.[11] In support of that factor, Plaintiff states only that 1 Chimi and Zhang are unable to provide relief to him because "1 Chimi Sushi sold all of its assets to Defendants as part of the sale of the Restaurant and 1 Chimi

---

[9] Congress knows how to embody a due diligence standard into a statutory scheme. *See, e.g.*, 15 U.S.C. § 77k(b)(3) (due diligence defense for underwriters as to non-expertised portions of a securities registration statement).

[10] The Court observes that Abumi did receive a representation and warranty from 1 Chimi that "the business sold herein is being operated in accordance with all laws, ordinances and rules affecting said business," and that the Affidavit of Title recited both that "the Transferor is not indebted to anyone and has no creditors other than those listed in the schedule of creditors" and that "there are no actions pending or judgments existing against the Transferor in any court." Wong Decl., Ex. A. Because it is unnecessary to do so here, the Court expresses no view on what impact, if any, such representations and warranties have on the successor-liability analysis.

[11] In *Musikiwamba*, the Seventh Circuit adopted a Janus-like interpretation of this factor. The court held that the factor admits of two distinct considerations: First, the court explained that it would be "grossly unfair, except in the most exceptional circumstances, to impose successor liability on an innocent purchaser when the predecessor is full capable of providing relief." 760 F.2d at 750. Second, the court stated that "it is also relevant whether the predecessor could have provided any or all relief to the plaintiff prior to the transfer of assets," because while successor liability is meant to ensure that "an injured employee [ ] not be made worse off by a change in the business," "neither should an injured employee be made better off." *Id.* "Under this view, if the predecessor would not have been able to provide the relief in the first place, it may be unfair—and may 'severely inhibit the reorganization or transfer of assets of a failing business'— to impose liability on a successor." *Battino*, 861 F. Supp. 2d at 408 (quoting *Musikiwamba*, 760 F.2d at 751); *see also Steinbach*, 51 F.3d at 847 (stating that "the purpose of successorship liability is not to provide windfalls for employees"). Although neither party has argued that the second consideration is relevant here, this interpretation does address the Appearing Defendants' arguments regarding the deleterious effects of the "substantial continuity" test on the ability to transfer the assets of failing companies. *See* Defs.' Mem. of Law in Opp'n to of Mot. for Summ. J. (ECF No. 53) ("Defs.' Opp'n") at 8-9.

Sushi has been dissolved" and that "Plaintiff cannot locate the previous owner."  Pl.'s Mem. at 11-12.  The Court does not accept the argument that the sale of 1 Chimi's assets and its subsequent dissolution (which describes the circumstances of most, if not all, asset sales) necessarily renders 1 Chimi unable to provide relief.

New York law clearly provides that, with certain exceptions not relevant here, "[t]he dissolution of a corporation shall not affect any remedy available to or against such corporation, its directors, officers or shareholders for any right or claim existing or any liability incurred before such dissolution."  N.Y. Bus. Corp. Law § 1006(4)(b).  Thus, the mere fact of dissolution is not dispositive here.

Plaintiff apparently fails to recognize that, while 1 Chimi did dispose of all of its assets in the June 2015 sale, it also received assets (money) in return.  *See* Wong Decl., Ex. A.  And Plaintiff makes no specific showing regarding any remaining assets that could be used to satisfy a judgment.  Similarly, Plaintiff provides no evidence whatsoever regarding the steps he took to locate 1 Chimi and Zhang.

If plaintiffs could satisfy this factor by simply showing that the predecessor has dissolved and stating (without any basis in evidence) that they could not locate the predecessor, then the "substantial continuity" test again would create the risk of imposing an inadvertent form of joint and several liability on innocent purchasers, whereby the plaintiff simply has the option whether to sue the actual violator of the law or the successor, whichever is easier.  In this Court's view, both the equitable roots of the "substantial continuity" test and the competing interests that must be balanced through its application, *e.g.*, *Vucitech*, 842 F.2d at 945, suggest that successorship liability should be an option of last resort, not simply an option for the convenience of the plaintiff.

So, for the reasons described above, the Court concludes that Plaintiff has not established that 1 Chimi and Zhang are unable to provide relief to him.  If this factor were dispositive of the parties' motions here, the Court would need to determine whether Plaintiff has failed to sustain his

burden to establish a required element of the test for successorship liability (in which case the Appearing Defendants' motion should be granted), or whether instead there is a genuine dispute of material fact as to the predecessors' ability to provide relief (which would preclude the granting of either party's motion). Because the Court has concluded that Plaintiff has failed to show either that he is entitled to judgment as a matter of law or that a genuine dispute of material fact exists on the issue of whether the Appearing Defendants had notice of Plaintiff's claim (or the potential for Plaintiff's claim), the Court need not resolve that question.

## V.   CONCLUSION

For the reasons described above, the Court concludes that Plaintiff has failed to present evidence entitling him to judgment as a matter of law on the issue of successorship liability. Accordingly, Plaintiff's motion for partial summary judgment on that issue is DENIED. With respect to the Appearing Defendants' motion for partial summary judgment, Plaintiff has failed to create a triable issue of fact on the issue of successorship liability, and that motion is therefore GRANTED. As a result, all federal and state claims arising from pre-June 2, 2015 conduct are hereby DISMISSED as to the Appearing Defendants, and the case will proceed against them only on claims arising from conduct on or after June 2, 2015.

The Clerk of Court is directed to terminate the motions pending at Dkt. Nos. 34 and 39.

SO ORDERED.

Dated:  August 14, 2017
New York, New York

_____
GREGORY H. WOODS
United States District Judge